Ex parte FOX (two cases).

## In re GRAND JURY INVESTIGATION OF BREWERS' ASS'N.

(Circuit Court of Appeals, Third Circuit. November 13, 1916.)

Nos. 2123–2125.

CRIMINAL LAW ⬦1134(3)—APPEAL—MOOT QUESTIONS.

In a grand jury investigation to determine whether corporations had violated Cr. Code, § 83 (Act March 4, 1909, c. 321, 35 Stat. 1103 [Comp. St. 1913, § 10251]), prohibiting campaign contributions by corporations in connection with elections at which Presidential and Vice Presidential electors or Representatives in Congress are to be voted for, etc., a secretary of an association of corporations was summoned and directed to produce books and papers. He failed and refused to produce books and papers in accordance with a subpœna duces tecum and the grand jury made presentment to the court concerning his failure, whereupon he was adjudged guilty of contempt. The grand jury proceeded, and upon other evidence returned true bills against the corporations being investigated. *Held*, that as the inquiry had ceased and the questions would probably arise on a trial of the indictments, questions as to whether the witness was bound to produce the documentary evidence and testify as desired will not be determined on a writ of error from the denial of a motion to quash the presentment by the grand jury, as well as writs of error to the denial of the witness' applications for habeas corpus, though to prevent complication the writs will be retained pending trial of the indictments.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2989, 2990, 3056; Dec. Dig. ⬦1134(3).]

In Error to and Appeal from the District Court of the United States for the Western District of Pennsylvania; W. H. Seward Thomson, Judge.

In the matter of the Grand Jury Investigation of the Brewers' Association. Motion to quash presentment against Hugh F. Fox for declining to answer questions was denied, and he appeals. In the matter of applications of Hugh F. Fox for writs of habeas corpus. The writs were denied, and applicant brings error. Writs retained under further advisement pending trial of indictments found.

David A. Reed, of Pittsburgh, Pa., James Scarlet, of Danville, Pa., Samuel P. Tull and D. P. Hibberd, both of Philadelphia, Pa., and George E. Shaw, of Pittsburgh, Pa. (Reed, Smith, Shaw & Beal, of Pittsburgh, Pa., of counsel), for plaintiff in error.

E. Lowry Humes, U. S. Atty., and Neil W. McGill and Benjamin M. Price, Asst. U. S. Attys., all of Pittsburgh, Pa., for defendant in error.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

McPHERSON, Circuit Judge. In these three cases—two writs of error and one appeal—Hugh F. Fox asks us to review certain orders of the District Court for the Western District of Pennsylvania. The facts are as follows:

On January 29, 1916, the grand jury for the district was about to reconvene, and the goverment had determined to lay before that body

the charge that numerous corporations had violated section 83 of the Criminal Code (Comp. St. 1913, § 10251). Accordingly the United States Attorney presented a petition on that date to the District Judges, setting forth:

"That he has reason to believe that various' corporations·in the Western district of Pennsylvania have, during the last three years and within the statute of limitations and for a considerable period prior thereto, been making large money contributions in connection with elections at which presidential, vice presidential, electors, representatives in Congress, and United States Senators have been voted for.

"That he proposes to submit to the grand jury which reconvenes at Pittsburgh, Pa., on February 1, 1916, an inquiry relating to the alleged violations hereinbefore referred to, and that to maintain the allegations of the government it would be necessary to establish the method employed by said corporations in contributing said sums of money for use in said elections aforesaid.

"That the government is informed and believes that said moneys were contributed through the agency of voluntary associations of which the corporations in question were members, and that in. order to establish the allegations it will be necessary to [produce] before the grand jury the books, papers, records, correspondence, checks, and minutes of the said associations, and it will also be necessary in the tracing of said moneys and for the purpose of establishing the use that was made thereof to require the presentations of the bank accounts of said associations.

"That the government is informed and believes that the following associations, their officers, agents, and employés, and the following banking institutions, have in their possession books, records, correspondence, and other documentary evidence, the production of which will establish the allegations of the government, and that the same is material and essential to the inquiry to be had before said grand jury."

The petition prayed the court for leave to issue subpœnas duces tecum to various persons and corporations named—among others, the United States Brewers' Association, its president, Edward A. Schmidt, its treasurer, Gustav W. Lembeck, and its secretary, Hugh F. Fox, directing them to produce before the grand jury:

"(1) The card index and record of the members of the United States Brewers' Association, together with the accounts and records of the association, showing the payments either in the nature of dues or in the nature of contributions paid by the members of said association to the association for the years 1911, 1912, 1913, 1914, and 1915.

"(2) Also all cashbooks and ledgers showing a record of all moneys received by, and all moneys expended by, the United States Brewers' Association in the years 1911, 1912, 1913, 1914, and 1915.

"(3) The constitution and by-laws of the United States Brewers' Association, and also the minute books and records of the association, containing a record of all proceedings and meetings of the United States Brewers' Association, the executive committee, board of directors, board of trustees, or any other committee or board thereof during the years 1911, 1912, 1913, 1914, and 1915.

"(4) All check books, bank passbooks, books of check stubs, and canceled checks, covering all money deposited in any bank by the United States Brewers' Association or by the treasurer or any other authorized officer thereof, as well as all moneys expended by the said association, its treasurer, or any authorized officer thereof, during the years 1911, 1912, 1913, 1914, and 1915.

"(5) All correspondence, original letters or copies of letters passing between the United States Brewers' Association and any of its members relative to payment of dues and assessments, or the making of contributions either by such members, their officers, agents, and employés, or the receiving, contributing, or expending of any of the funds of the United States Brewers' Association by that association, its officers, agents, and employés during the years 1911, 1912, 1913, 1914, and 1915.

"(6) All correspondence, letters, or copies of letters passing between the United States Brewers' Association, its officers, agents, or employés and the Pennsylvania State Brewers' Association, the Brewers' Association of Western Pennsylvania, the Westmoreland County Brewers' Association, and the Fayette County Brewers' Association during the years 1911, 1912, 1913, 1914, and 1915.

"(7) All correspondence, letters, and copies of letters passing between the United States Brewers' Association, its officers, agents, and employés, and any other person, firm, or corporation, relating directly or indirectly to the expenditure of any of the funds of the association, or of any members of the association, or demanding or requesting the payment or the expenditure of any money belonging to the association, or any of its members, for any purpose, during the years 1911, 1912, 1913, 1914, and 1915."

On the same day the court allowed the subpœnas, which were afterwards issued and served. The subpœna to Fox commanded him to appear before the grand jury on February 7, "to give evidence on the part of the United States generally, and not to depart the said court without leave thereof or [of] the United States Attorney."

On February 8—the foregoing petition and the court's order of allowance not having been previously filed of record—Fox and several other persons moved the court to quash the subpœnas and to stay the proceedings, asserting that the subpœnas had been issued without authority of law, and were therefore void, for the following reasons:

"First. That said writs of subpœna duces tecum, by reason of the sweeping and unreasonable character of the command to your petitioners to produce all of the books, papers and documents of the several companies of which your petitioners are officers, is in violation of the fourth amendment of the Constitution of the United States protecting your petitioners against unreasonable searches and seizures.

"Second. That there is no entry upon the records of this court of any order or authority authorizing or directing the issuance of said subpœna duces tecum, and that your petitioners are informed and believe, and therefore charge, that at the time the said subpœnas were issued no order or authority had been obtained from this court authorizing the issuance thereof.

"Third. That said writs of subpœna duces tecum are fatally defective upon their face, in that they do not apprise your petitioners of the names of the persons with respect to whom your petitioners have been called to testify."

On February 15 Judge Thomson refused the motion, Judge Orr announcing a contrary opinion, but declining to note a formal dissent because he believed the matter to be for Judge Thomson alone to decide. Fox thereupon appeared before the grand jury, but failed to answer certain questions or to produce certain documents. On February 21 the grand jury made a presentment to the court, stating:

"That on the 1st day of February, 1916, one Hugh F. Fox was duly served with a subpœna duces tecum, which said subpœna was duly issued in pursuance of an order made by this honorable court.

"That the said Hugh F. Fox has appeared this day before the grand jury assembled, and has refused to testify to certain questions asked, in the following particulars:

"First. The said witness Hugh F. Fox, while admitting that he had been secretary of the United States Brewers' Association since January, 1908, refuses to testify as to his duties.

"Second. That the said Hugh F. Fox has failed and neglected to produce the original of certain records of the United States Brewers' Association in his charge, but in lieu thereof has produced what purports to be a copy thereof.

"Third. That the said Hugh F. Fox has failed to produce any of the correspondence of said association as called for by the subpœna served February 1, 1916, upon the said witness in this case.

"Fourth. The said Hugh F. Fox declines to answer as to the number of stenographers employed by the said United States Brewers' Association in New York City.

"Fifth. The witness declines to answer as to where the moneys of the United States Brewers' Association are deposited, although admitting that moneys come into his hands from various associations or corporations, and that he knows where said funds are deposited.

"The grand jury directs the attention of this honorable court to the fact that the said witness expressly stated that his refusal was not based upon any constitutional privilege, or upon any fear of incriminating himself by his answers, but because of advice of counsel.

"The grand jury, therefore, makes presentment of these matters to the court, and requests the court to direct and instruct the said witness to answer the foregoing matters in the presence of the said grand jury, or such part of the said matters as the court may deem proper, and that the court shall take such other action in the premises as shall be necessary to enforce its decree."

Thereupon the court ruled Fox to show cause why he should not answer the questions and produce the records, or, "in default thereof, why an attachment should not issue for contempt." This rule was returnable on February 23, and upon that day Fox filed an answer in which, inter alia, he gave his reasons for failing to produce the records, and stated also that (although the grand jury had apparently failed to understand him) he had in fact declined to answer the questions on the ground that his testimony might tend to incriminate him, and had attempted so to assert. The court called and examined Fox as a witness, and decided that he was not obliged to answer the questions involving self-incrimination, saying also, that, in view of his statement that he was ready and willing to produce the papers called for by the subpœna, the court would assume that the witness would carry this out in good faith. Accordingly no further proceedings were taken in the matter at that time, and Fox went again before the grand jury. On the same day, February 23, a second presentment was made, in which the grand jury stated:

"That the said Hugh F. Fox was this 23d day of February, 1916, called before the grand jury and asked to produce the books, correspondence, and records called for by the terms of said subpœna. That the said Hugh F. Fox, secretary, as aforesaid, has failed to produce the record of proceedings and meetings of the committees of said association for the years covered by the subpœna, although he is not only the secretary of the association itself, but the secretary also of the advisory committee, the vigilance committee, the labor committee, the publication committee, the membership committee, all of which are committees of said association.

"That he has also failed to produce any records of said association, showing the moneys expended by said association, during the years covered by the subpœna.

"That the said Hugh F. Fox has failed to produce any of the correspondence required by the subpœna for the years 1911, 1912, 1913, and 1914, and but very little of the year 1915.

"That the court may be advised as to the meager records and correspondence which have been produced by the said Hugh F. Fox, the grand jury asks the privilege, if the court shall deem proper, of submitting to your honorable court the records which have been actually produced."

To this Fox filed an answer on the same day, in which he declared as follows:

"It is true, as stated in the presentment, that affiant was served with a subpœna duces tecum, and it is true that affiant was called before the grand jury and asked to produce the books, correspondence, and records mentioned in the subpœna. It is not true that affiant has failed to produce the records of proceedings and meetings of the committees of said association for the years covered by the subpœna. Affiant produced to the grand jury the year books of the United States Brewers' Association for said years, which year books contain the records of the proceedings of the advisory committee, vigilance committee, labor committee, publication committee, and membership committee of said association. The record contained in said year books is the only record of the proceedings of said committees in the custody of affiant at or since the service of said subpœna.

"Affiant has had custody of no records of said association showing the moneys expended by said association during any of the years covered by the subpœna, at or at any time since the service of the subpœna.

"Affiant has not had in his custody at, or at any time since, the service of the subpœna any correspondence of the kind mentioned in the subpœna for any of the years mentioned in the subpœna, except such correspondence as affiant has already produced to the grand jury."

Later in the day the court examined Fox again, and in this examination the United States attorney and the counsel for the witness took part. At the end of the hearing the court adjudged the witness to be in contempt, and stated the reasons therefor as follows:

"The United States having under investigation certain alleged offenses against certain corporations—among others, the United States Brewers' Association—has instituted a proceeding before a grand jury now sitting in this district, alleging that certain books and papers are necessary to throw light on that investigation.

"The court, acting under the averments of the constituted authority of the United States, issued a very broad subpœna upon that corporation to produce certain books and papers therein specified. It appears that this subpœna was served upon Mr. Fox on February 1, 1916. Proceedings were had for the purpose of quashing that subpœna, which after full hearing, was denied by the court, and the corporation was commanded to produce the papers called for.

"On this day the grand jury have made a presentment, which has been filed, setting forth the service of this subpœna upon Mr. Fox and his appearance before the grand jury, and that he has failed to produce records of such association showing moneys expended by said association during the years covered by the subpœna, that is, the years 1911, 1912, 1913, 1914, and 1915, and also that he has failed to produce any of the correspondence required by the subpœna for the same years, or for the years 1911, 1912, 1913, and 1914, and very little for the year 1915.

"The investigation is against the corporation, and not against the witness. And it becomes the duty of the corporation, as the court understands it, to produce those books and papers in obedience to the order of the court. Not only so, but it becomes the duty of the officers of that corporation, who may be served, to produce those papers, to produce them. Good faith to the court, as well as good faith to the party himself, who is commanded to produce the papers, requires that this should be done.

"There is no allegation that there are no records of the association showing moneys expended by said association during the years covered by the subpœna. On the other hand, it appears to be conceded, or not denied, by the secretary that such records are in existence, but he says they are in the custody of the treasurer.

"As I view it, this is no answer to the subpœna. The corporation itself cannot produce papers. They must be produced by an officer of a corporation. And when the chief officer of a corporation is served with notice to produce

236 F.—55

them, it becomes his duty, in obedience to the subpœna, to produce them, and not attempt to hide behind some other officer by saying that they are in the immediate custody of that officer. And Mr. Fox admits on the stand, under oath, that he has made no effort to produce these papers showing the moneys expended by that corporation, although he was so notified on the 1st of February, 1916.

"In my judgment, this is a clear and plain repudiation of the duty devolving upon him by order of the court.

"I am also by no means satisfied from the testimony of Mr. Fox that he has satisfactorily explained the nonproduction of the correspondence called for by the subpœna for the years 1911, 1912, 1913, and 1914. He was the custodian of those papers, the legal custodian of the papers. And his answer is that they cleared the files some time in January of 1916.

"As the papers were in existence, and as the papers representing the moneys expended are in existence, it was the duty of the witness to satisfy the court or show good cause for their nonproduction, and I have not been satis-fied. And I am therefore compelled to adjudge Hugh F. Fox in contempt of the order and subpœna of this court with reference to the nonproduction of the records showing moneys expended by the corporation, and also with refer-ence to the nonproduction of the correspondence called for.

"This being true, the order of the court is that he be committed to the custody of the United States marshal until such papers are produced before the grand jury, or until he purges himself of his contempt."

Fox was thereupon committed to the custody of the marshal and was imprisoned, but was released the next day on bail. On March 1 he and his counsel presented certain books and papers and asked the court to determine whether these documents came within the sub-pœna, and (if they did) whether they contained matters relevant to the inquiry. The court examined the documents, and decided that most of them were covered by the subpœna, but declined to decide the question of relevancy, saying:

"I think, therefore, the court will have to assume the materiality of the books, papers and documents in question. This assumption being based on the alleged necessity of the books and papers and documents embraced in the subpœna, as set forth in the petition of the United States attorney.

"The objection of defendant's counsel is therefore overruled, and the papers which have been designated as coming within the terms of the subpœna are directed to be delivered to the grand jury in their investigation."

On the next day, March 2, Fox presented a petition setting forth:

"First. That by an order heretofore made in this proceeding your honorable court adjudged your petitioner to be in contempt of court in having failed to produce certain alleged papers mentioned in the subpœna duces tecum hereto-fore served upon your petitioner.

"Second. That your petitioner is advised by counsel and therefore avers that your honorable court was without jurisdiction in this matter to make the said order, or to try your petitioner, or to sentence him, or to commit him for contempt for the following reasons:

"(a) The presentment of the grand jury upon which said order of this court was issued was not made in any proceeding entitled as between the Unit-ed States and this petitioner as defendant, and because the caption and title of this proceeding as shown in the said presentment was and is defective in failing to state that your petitioner is defendant in a criminal charge brought by the United States against your petitioner.

"(b) That said presentment charged no contempt or other crime on the part of your petitioner.

"(c) Because said presentment contained no prayer that your petitioner should be held to be in contempt or should be compelled to purge himself, or should be punished.

"(d) Because said presentment did not claim or aver the existence of any of the said papers which your petitioner was charged with failure to produce, and did not charge that your petitioner had knowledge of the existence of said papers, and did not charge that your petitioner had custody, actual or implied, of any of said papers.

"Third. That your petitioner is advised by counsel and therefore charges that your honorable court erred in finding that your petitioner was in contempt of court for the following reasons:

"(a) That your petitioner was not and is not in contempt of this court in having failed to produce books in the custody of Gustav W. Lembeck, treasurer of the said association, who had been subpoenaed to produce the same papers, and who at the time of your petitioner's trial was present in court in response to said subpoena served upon him.

"(b) That no evidence or other proof was produced by the government to overcome the presumption of your petitioner's innocence of the said crime of contempt, or to overcome your petitioner's sworn answer and sworn testimony to the nonexistence of any papers covered by the said subpoena. other than had been produced by your petitioner."

For these reasons he asked the court: (1) To revoke and rescind the adjudication of contempt and the order of commitment; (2) to quash the presentment of the grand jury and all proceedings taken thereon for want of jurisdiction; and (3) to dismiss the presentment and the charge against him for want of supporting proof. On March 7 the court dismissed the petition. On March 16 Fox renewed this application by a simple motion, and this was dismissed on March 17.

The proceedings thus far described have been brought before us by the writ of error entitled Re Grand Jury Investigation (No. 2125).

The other two cases, Nos. 2123 and 2124, are a writ of error and an appeal, respectively, based on an order of the court, dismissing Fox's petition for a habeas corpus, and remanding him to the custody of the marshal. Each raises the same questions as the other, and both were sued out in order to avoid any question concerning the proper form of appellate procedure. The additional facts are as follows:

As already stated Fox was committed to prison on February 23; on the next day he presented a petition for a writ of habeas corpus, which was immediately issued, and he was thereupon released on bail, and has since remained at liberty. The petition asserted that he was in custody by virtue of the court's order of February 23, the order being based on the second presentment of the grand jury; that the presentment was founded on the petitioner's failure to produce certain books and papers; that Lembeck, the treasurer of the association, had also been subpoenaed to produce the same books and papers; that the petitioner had answered the presentment, and had denied that he was in possession of any of the books and papers therein described; that he had been examined in open court, and had testified to the same effect as his sworn answer, and that no proof in contradiction thereof had been offered. He further averred that his imprisonment was without authority of law, because: (a) He was not in contempt for failing to produce the books and papers described, as he had no such books and papers in his possession, and had not had since the subpoena was served, but that (if such books

and papers existed) they were in the custody, possession, and control of Lembeck, who had been in court at the time when the petitioner was examined; and (b) because he was not in contempt for failing to produce the correspondence described, as no such correspondence was now in existence, his repeated affidavits and testimony to the effect that such correspondence had been destroyed prior to the service of the subpœna on him not having been contradicted or shaken in any way by testimony or other proof. He amended his petition on March 2 by leave of court by adding the following reasons to (a) and (b) just summarized:

"(c) That this court was without jurisdiction to try or to sentence or to commit your petitioner for the said alleged contempt, because the said presentment was not made in any proceeding entitled as between the United States and this petitioner as defendant, and because the caption of said presentment was defective in failing to state that your petitioner was defendant in a criminal charge brought in behalf of the United States.

"(d) That this court was without jurisdiction to try or to sentence or to commit your petitioner, because the said presentment charged no contempt or other crime on the part of your petitioner.

"(e) That this court was without jurisdiction to try or to sentence or to commit your petitioner, because the said presentment contained no prayer that your petitioner should be held to be in contempt, or should be compelled to purge himself, or should be punished.

"(f) That this court was without jurisdiction to try or to sentence or to commit your petitioner, because the said presentment contained no allegation that in contempt of court your petitioner had disobeyed the command of the said subpœna, and no prayer that your petitioner be attached or punished therefor."

To this petition the marshal made two returns and, moreover, filed a full answer, to all of which the petitioner made objection and reply, the final result being that after hearing and argument the court dismissed the petition on March 17 and remanded Fox to the custody of the marshal. Thereupon the writ of error and the appeal now before us (Nos. 2123 and 2124) were taken.

We have stated the facts in all the cases fully in order to show clearly the nature and the object of the proceedings. The grand jury was conducting an inquiry for the purpose of determining whether section 83 had been violated; and, if so, by whom. To aid this inquiry, witnesses were summoned and were also directed to produce books and papers. For an alleged failure to obey the subpœna, the witness Fox was adjudged in contempt and was committed to prison. Now, if the inquiry before the grand jury were still in progress, and if before reaching a decision that body found it necessary to examine and consider the books, papers, and correspondence referred to, we might properly be called upon to determine the important questions raised by the writs before us. But, as we regard the situation, no such exigency exists; the questions have become academic for the reason that, as further appears, the grand jury has completed its deliberation, and enough evidence was laid before it to make out a prima facie case against the corporations complained of. True bills have already been found, and copies of these are now before us, which show that on March 2 indictments were found against numerous defendants charging the violation referred to, and that these have been docketed

at Nos. 25 and 26 November term 1915 and are now awaiting trial. As the only object of the grand jury's inquiry was to determine whether or not indictments should be found, and as that object has already been attained, we are unable to see that any helpful result would follow our passing at this time upon the questions propounded. These sufficiently appear in the foregoing statement, and we refrain from even intimating an opinion upon them. An additional reason for so refraining lies in the fact that some, if not all, of them will probably arise again upon the trial of the indictments, and may then come before us for review. In the course of a regular trial all the facts and circumstances bearing upon them can be made to appear by both parties much more completely than in the course of an ex parte proceeding such as we are now asked to review, and they can be raised and decided much more satisfactorily.

Ordinarily therefore we should dismiss the three writs before us, without prejudice to the right of the appellant and the plaintiff in error to raise hereafter the questions stated in the assignments. But, as such a dismissal might lead to some complications that should if possible be avoided, we shall content ourselves with the foregoing expression of our views, and shall retain the pending writs under further advisement, pending the trial of the indictments already found.